IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

ELIZABETH COOGAN-GOLDEN,     )
                                 )
     Plaintiff,             )
                                 )
v.                            )     Civil Action No. 5:15-cv-00054
                                 )
WAL-MART STORES EAST, LP, *et al.*,     )     By: Elizabeth K. Dillon
                               )         United States District Judge
     Defendant.           )
                                 )

## MEMORANDUM OPINION

This case is before the court on defendant Wal-Mart Store East, LP's (Wal-Mart) motion
for summary judgment (Dkt. No. 104) and its supplemental motion for summary judgment,
which seeks judgment against Elizabeth Coogan-Golden's claim for punitive damages (Dkt. No.
146.)  As the court previously advised the parties it intended to do, the court will deny the
motion for summary judgment and grant the supplemental motion.  This opinion sets forth
briefly the reasons for the court's rulings.

## I.  BACKGROUND

Ms. Coogan-Golden was injured while shopping in the Wal-Mart store in Staunton,
Virginia, on August 20, 2013.  Specifically, while she in the sporting goods section of the store,
an electrical junction box cover fell from the ceiling and struck her, resulting in injuries.

At the time of the accident, the store was having its roof replaced.  Wal-Mart had
contracted with National Roofing Partners to replace the roof, and National Roofing Partners
subcontracted with MountainTop Enterprises d/b/a Saratoga Roofing (Saratoga) to perform the
work.[1]  It is undisputed that Wal-Mart was not responsible for supervising any of the roofing

---

[1] Saratoga was named as a defendant but, after the close of discovery, Coogan-Golden and Saratoga

work or directing the activities of any of Saratoga's employees in the performance of the work, and Coogan-Golden does not dispute that Saratoga was an independent contractor of Wal-Mart's.

There are a number of undisputed facts that are relevant to whether Wal-Mart had actual notice sufficient to impose liability on it for the accident. Most importantly, there were three other incidents that occurred shortly before the accident involving Coogan-Golden, where items fell from Wal-Mart's ceiling while roofing work was occurring. In one, debris or dust fell from the ceiling onto a customer in the electronics section of the store. In another, a globe that covered a security camera fell and struck a customer.[2] In the third, a piece of plastic conduit came loose and fell, although it did not fall all the way to the floor; instead, it was hanging suspended about ten feet above the floor. Several Wal-Mart's employees testified that they believed those items had fallen as a result of the roofing work. Wal-Mart admits it had notice of all of those incidents, and there are documents and testimony showing that Wal-Mart discussed those incidents internally and with its roofing contractor prior to Coogan-Golden's accident.

Coogan-Golden's second amended complaint contains two counts, a count of "negligence" and a count of "willful, wanton and/or reckless negligence," the latter of which includes a request for punitive damages.

---

entered into a settlement agreement and plaintiff dismissed Saratoga with prejudice.

[2] There is conflicting testimony and documentation about: (1) whether the security camera globe falling and the dust/debris were part of the same incident or separate incidents; and (2) whether anyone was actually struck by the globe falling or it just fell to the floor. Viewing the facts in the light most favorably to Coogan-Golden, the court will treat those as separate incidents for purposes of summary judgment and will assume that the globe in fact struck someone. But even if it was a single incident and the globe did not hit a customer, the court's analysis and rulings would remain the same.

## II. DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)); *see* Fed. R. Civ. P. 56(a). If, after adequate discovery, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," such a failure "necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and "[t]he moving party is 'entitled to summary judgment as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### B. Analysis

#### 1. Defendant's motion for summary judgment

Under Virginia law, which applies here, "'[a]ll negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person.'" *Jarmak v. Ramos*, 497 F. App'x 289, 291 (4th Cir. 2012) (quoting *Steward ex rel. Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 254 (Va. 1991)); *see Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188, 189–90 (Va. 1962).

In Virginia, a landowner "must use ordinary care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety." *Tate v. Rice*, 315 S.E.2d 385, 388 (Va. 1984). In order to be held liable, a plaintiff must show that "the owner had knowledge

of the alleged unsafe condition, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993). So, the knowledge or notice requirement may be satisfied by either actual notice or constructive notice. *Id.*

In its motion for summary judgment, Wal-Mart makes three arguments, two of which are related. First, it argues that it cannot be held liable for the negligence of the independent contractor that was hired to repair the roof. (Mem. Supp. Mot. Summ. J. 5–8, Dkt. No. 105.) Relatedly, it argues that it had no duty to warn the public of possible dangers resulting from the work of the independent contractor. (*Id.* at 11–12.) In its third argument, it contends that it "had no notice of the specific unsafe condition that caused the plaintiff's alleged injury." (*Id.* at 1.) It argues that the specific unsafe condition was an improperly secured and loose electrical junction box cover, and that it had no actual notice of that box cover being improperly secured or loose, nor is there any proof as to how long that specific condition had existed so as to give Wal-Mart constructive notice. (*See generally id.*)

The court addresses the notice issue first. As to this issue, Coogan-Golden's theory is that Wal-Mart had actual notice of an unsafe condition at the requisite level of specificity. Thus, she argues the constructive notice cases cited by Wal-Mart are not controlling.[3] Whether or not Wal-Mart had adequate notice to give rise to a duty turns on how broadly the court views the "unsafe condition." If the "unsafe condition" is that objects might fall from its ceiling somewhere in its store during the roofing project, then a reasonable jury could find that Wal-Mart had notice and a corresponding duty to inspect, or to take some action to protect or warn its customers.

---

[3] She argues, in the alternative, that Wal-Mart had constructive notice of the unsafe condition. (Dkt. No. 123 at 7 n.2.)

Wal-Mart, however, relies on language from *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004), in which the plaintiff attempted to establish notice by pointing to evidence that thousands of incidents of merchandise falling had occurred in Wal-Mart stores nationwide in the five-year period preceding her injury from a mirror display. The court concluded that evidence was insufficient proof of actual or constructive notice under Virginia law because it was not evidence that "Wal-Mart had actual or constructive notice of the *specific* unsafe condition that injured *her*." *Id.* at 453 (emphasis in original).

The evidence that plaintiff attempted to use in *Hodge* is a far cry from the evidence presented by Coogan-Golden here. The evidence in *Hodge* that, in other stores over a five-year period, there were incidents of falling merchandise is entirely too vague and unconnected to the plaintiff's injury to support a finding of notice. But here, there is evidence that in the same store, over a period of less than a month, items fell from the ceiling, and all are alleged (and even thought by Wal-Mart employees) to have been caused by the vibrations from an ongoing roofing project. That is sufficient for a reasonable jury to find that Wal-Mart had notice of the unsafe condition that injured Coogan-Golden—improperly secured items on its ceiling that could fall due to vibrations from the roofing project. Thus, she is entitled to have a jury determine whether Wal-Mart had notice and whether it acted reasonably in responding to this condition, *e.g.*, whether, as Coogan-Golden alleges, Wal-Mart was negligent for failing to inspect the ceiling for loose items, failing to otherwise take precautions to protect its customers, or failing to warn customers of the hazard.[4]

Wal-Mart argues that it had to know that this specific junction box cover was loose and that, because it did not, it did not have notice of the specific hazard that injured Coogan-Golden.

---

[4] Coogan-Golden suggests that Wal-Mart could have had the roofing work done at night, cordoned off the areas of the store where roofing work was occurring above, or used spotters—some of which were actions that it took after Coogan-Golden was injured)

But again, the court believes Wal-Mart is defining "specific" much too narrowly, particularly in the context of this case. Wal-Mart seems to be arguing that it had to know that this particular junction box cover, in the sporting goods area of the store, was improperly secured or loose. But the court does not believe that the law requires so fine a parsing in order to establish actual notice. Wal-Mart indisputably had notice that objects were falling from the ceiling of its Staunton store during re-roofing activities, within a fairly short time-frame. That is sufficient for a reasonable jury to conclude Wal-Mart had notice of the actual hazard of improperly-secured objects falling from the ceiling due to vibrations from the roofing work.

As to Wal-Mart's contention that it cannot be held liable for the acts of its roofing contractor, Coogan-Golden readily admits that the roofing contractor is an independent contractor and agrees with the general principle. But she argues that she is not seeking to hold Wal-Mart liable for negligence by the roofing contractor, but for Wal-Mart's own negligence in failing to correct a problem of which it had notice—items falling from the store ceiling during the roofing work. She claims she was injured by the "confluence of two events: (1) the vibrations emanating from Saratoga's roofing work, [which] caused (2) the flimsly secured electrical cover to become dislodged and fall from the ceiling." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 3, Dkt. No. 123.) The specific failures she identifies by Wal-Mart are its failure to inspect the ceiling in advance of the accident, failing to take reasonable precautions to protect customers from the consequences of that oversight, and failure to warn of the unsafe condition that arose during the roofing work. (*Id.* at 3–4.)

The court agrees that these facts are sufficient for a jury to find that Wal-Mart itself was negligent, particularly since the undisputed facts establish that Wal-Mart had exclusive control over the interior of its building. The roofing employees were not inside and could not control

whether items were properly secured to the ceiling, to security cameras, or to junction boxes. As already noted above, the court concludes that a reasonable jury could find that Wal-Mart did not act reasonably in failing to inspect, failing to take additional precautions to protect its customers, or in failing to warn its customers of the hazard.

As to the related argument that Wal-Mart had no duty to warn of the hazards created by an independent contractor, Coogan-Golden argues that Wal-Mart's duty was non-delegable, relying on *Love v. Schmidt*, 389 S.E.2d 707 (Va. 1990) and other cases. In its reply, Wal-Mart points to the Supreme Court of Virginia's more recent decision in *Southern Floors & Acoustics, Inc. v. Max-Yeboah*, 294 S.E.2d 907 (Va. 2004). There, the court distinguished *Love* by explaining that *Love* imposed liability on the premises owner in the context of "regular and routine maintenance, repair, and janitorial services," which duties are non-delegable. 294 S.E.2d at 912. By contrast, in *Southern Floors*, the work by the independent contractor involved "discrete and isolated repair and improvement," and the premises owners there could delegate that work to an independent contractor and its corresponding duty to maintain the premises where the work was occurring. *Id.* Wal-Mart contends that this case, like *Southern Floors*, involved "discrete and isolated repair and improvement," and thus the court could delegate its duty to maintain the premises.

While it is true that both *Southern Floors* and this case both involved isolated repair and improvement, there is a crucial difference between that case and this one. The *Southern Floors* court held that a grocery store was not liable when a customer tripped over a stack of tiles in an aisle where a subcontractor was installing a new floor. The court reasoned that the grocery store "had no duty to supervise an independent contractor, and no actual or constructive notice of the defect." 594 S.E.2d at 912. The court noted that it would be "antithetical to the definition of an

independent contractor to impose a duty to supervise upon the principal when the essence of the relationship is lack of power and control to supervise." *Id.* Here, by contrast, the court has already concluded that there is sufficient evidence that Wal-Mart had notice to allow a jury to hear the claim. More importantly, Coogan-Golden's contention here is not a failure to adequately supervise the roofing work, but a failure to secure or warn of hazards in the *interior* of the store that, according to plaintiff's theory, were caused by the roofing work *in conjunction with* improperly secured objects on the ceiling. The objects hanging in the interior of the building from the ceiling were squarely within Wal-Mart's exclusive control, not the roofing company's. So, the court does not think that imposing an independent duty on Wal-Mart to inspect its premises, or take steps to protect or warn its customers, would be inconsistent with *Southern Floors*.

For all of the above reasons, the court will deny Wal-Mart's motion for summary judgment.

2. **Defendant's supplemental motion for summary judgment as to punitive damages**

Turning to defendant's supplemental motion for summary judgment, the court has already discussed the legal standards applicable to Coogan-Golden's claim for punitive damages (Dkt. No. 133), and will not repeat the entirety of that analysis here. In short, to be entitled to punitive damages in Virginia, the plaintiff must show that the defendant acted not just with negligence, and not just with gross negligence, but willfully and wantonly. *Harris v. Harmon*, 486 S.E.2d 99, 101–02 (Va. 1997) (stating that willful and wanton negligence "generally involves some type of egregious conduct . . . going beyond that which shocks fair-minded people" and explaining that gross negligence, which occurs when a defendant "disregard[s] prudence to the level that the safety of others is completely neglected" and "shocks fair-minded

people," is insufficient to state a punitive damages claim). Willful and wanton negligence occurs when a defendant acts "consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 640 (Va. 1992) (citations omitted); *see also Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988) (noting the Supreme Court of Virginia's "general reluctance to allow punitive damages in run-of-the-mill personal injury cases").

The Supreme Court of Virginia has explained that it is a narrow range of cases in which such damages are allowed, and those cases have involved extremely egregious facts, far more egregious than Wal-Mart's conduct here. *Phillip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 283 (Va. 1988). *See also, e.g.*, *Watson*, 413 S.E.2d at 642 (holding there was evidence from which the jury could have concluded that "Owens-Corning knew that inhalation of dust from its . . . product could cause lung disease in humans, that it actively concealed this danger, and it did not warn insulators [like the plaintiff] of this hazard even though it warned its own employees").

In her opposition to the supplemental motion for summary judgment, Coogan-Golden's primary argument is that the court cannot grant the motion because it denied Wal-Mart's motion to dismiss the punitive damages claim, and so the law-of-the-case doctrine forbids it. She is incorrect. The law of the case doctrine does not prevent a court from granting summary judgment on a legal issue on which it previously denied a motion to dismiss. *Am. Canoe Assoc.. v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at anytime prior to final judgment which such is warranted . . . . Law of the case . . . . does not and cannot limit the power of a court to reconsider an earlier ruling."); *Columbia Gas*

*Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 523 (E.D. Va. 2013) (rejecting identical argument and noting that the "doctrine is not so restrictive" that it prevents a court from granting summary judgment after denying a motion to dismiss on the same grounds, because denial of a motion to dismiss "is not a final order"); *see also Presley v. City of Charlottesville*, No. 2007 WL 1303010, at *1 (W.D. Va. May 3, 2007) (setting forth same reasoning and same basic authority as *Columbia Gas Transmission*).

Furthermore, this court explicitly noted in its order denying the motion to dismiss that facts "adduced in discovery . . . may well render plaintiff's claim for punitive damages subject to summary judgment." (Mem. Op. at 5, Dkt. No. 133.) That is precisely what has occurred here.

Although Coogan-Golden's second amended complaint repeatedly alleged that Wal-Mart did "nothing" in response to the known danger of improperly-secured objects falling, the evidence has not borne that out. Wal-Mart investigated, completed a report, and notified the roofing contractor about the incidents (or at least some of them). After the conduit fell, Wal-Mart took the piece of conduit down. Most critically, after the security camera cover fell, Wal-Mart's store manager instructed his employees to check the remaining security globe covers and ensure that they were sufficiently secured, and afterward, no other globes fell. This responsive measure was conceded by Coogan-Golden's counsel at the hearing. (Tr. of Summ. J. Hr'g 40–41, Dkt. No. 202.) As another judge of this court has explained, "[c]onduct that evinces some concern for the safety of others, such as attempts to neutralize dangers once they are known, will weigh against an award of punitive damages." *Russell v. Wright*, 916 F. Supp. 2d 629, 660 (W.D. Va. 2013) (citing *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268 (Va. 1988)). Thus, Wal-Mart's conduct in making some attempt to remedy the problem of falling objects and to protect customers from them, however negligent it may have been, is sufficient to show that Wal-Mart

did not engage in willful and wanton conduct so as to support a claim for punitive damages. The court will grant Wal-Mart's supplemental summary judgment motion and grant judgment in favor of Wal-Mart as to Count Two of the second amended complaint.

III. CONCLUSION

For the foregoing reasons, Wal-Mart's motion for summary judgment will be denied and its supplemental motion for summary judgment as to Count Two will be granted. An appropriate order will be entered.

Entered: May 30, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge